BRANNIN, Appellant, *v.* SWEET GRASS COUNTY, Re-
SPONDENT.

(No. 6,673.)

(Submitted November 12, 1930.  Decided November 26, 1930.)

[293 Pac. 970.]

*Mr. R. H. Wiedman,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Gibson & Smith,* for Respondent, submitted a brief; *Mr. Fred L. Gibson* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This appeal presents for decision the sole question as to whether the sheriff of the county may collect from the county mileage or actual expenses incurred on a trip made by him without the state for the purpose of independent investigation into an alleged crime.

It appears that one J. C. Price disappeared from Sweet Grass county during the month of December, 1928, and on January 6, 1929, re-appeared in Salt Lake City, Utah, declaring that he had been kidnaped from Sweet Grass county, although shortly theretofore a coroner's jury had found him to be dead. The sheriff left for Salt Lake, under order and direction of the county attorney, to investigate the case, not being possessed of a warrant of arrest or other warrant and thus incurred expenses incident to travel from Big Timber, Montana, to Salt Lake City and return. He claims mileage at the rate of ten cents per mile to and from Monida, Montana, the state boundary line, $79, and his actual expenses incurred for railroad fare from Monida to Salt Lake City and return,

$24.74, without the state. His bill presented to the board of county commissioners was disallowed, and thereupon this action was instituted, which upon issue joined was tried to the court without a jury. Judgment was duly entered dismissing the plaintiff's complaint and allowing costs of defendant, from which the plaintiff has appealed.

"Where the salary or compensation of a county official ■ is definitely fixed by law, it is generally held that such sum is intended to include his entire official remuneration, and to preclude extra charges for any services whatsoever, unless it is clear that the statute contemplated and intended additional compensation for certain extra services. Generally speaking, it may be said that when enumerating the fees which a particular officer may charge it will be presumed that the legislature meant to designate with precision the services for which he should receive fees, and that such fees should be his full compensation for services incidental to his office." (15 ■ C. J., p. 497.) And the officer should be able to show, not only that the services were performed for the county as such officer, but also a statute or constitutional provision authorizing the particular services in question, in force at the time the services were performed, or else a contract therefor authorized by law. (15 C. J. 496; and see *Proctor* v. *Cascade County*, 20 Mont. 315, 50 Pac. 1017; *Sears* v. *Gallatin County*, 20 Mont. 462, 40 L. R. A. 405, 52 Pac. 204; *Scharrenbroich* v. *Lewis and Clarke County*, 33 Mont. 250, 83 Pac. 482.) At a very early date (1874) this court declared the correct governing principle, viz.: that "If the statute has not conferred the right to compensation, the court does not possess it by implication, and cannot enforce it, for that would be to violate the law, instead of enforcing it." (*Johnston* v. *Lewis and Clarke County*, 2 Mont. 159; see, also, *Raymond* v. *Madison County*, 5 Mont. 103, 2 Pac. 306.) In our opinion it is generally essential, if not indispensable, for the sheriff or other county officer to point to the particular statute entitling him to receive the compensation claimed. And since the sheriff is not allowed by statute compensation for services rendered in inde-

pendent inquiry beyond the state, he is not lawfully entitled to collect therefor. ''What is not by the law imposed as expenses upon a county is not a charge against it.'' (*Wade* v. *Lewis and Clarke County*, 24 Mont. 335, 61 Pac. 879, 880; *In re Hyde*, 73 Mont. 363, 236 Pac. 248.)

Section 4774, Revised Codes 1921, as amended by Chapter 157 of the Laws of 1925, enumerates the duties of the sheriff for which he is paid a salary fixed by law. Without other express statutory authorization he is not entitled to additional compensation although he ''must perform such other duties as are required of him by law.'' (Sec. 4794, Rev. Codes 1921.)

He is authorized to charge and collect ''for each mile actually traveled in serving every writ, process, order, or other paper going and coming, ten cents per mile, when such travel is made by railroad and in all cases wherein travel is made other than by railroad twelve and one-half cents per mile going and twelve and one-half cents per mile returning.'' (Sec. 4916, Rev. Codes 1921, as amended by Chapter 111 of the Laws of 1927, in effect at the time, although again further amended by Chapter 89 of the Laws of 1929.) And, ''while in the discharge of his duties, both civil and criminal, except as hereinbefore provided, the sheriff shall receive ten cents per mile for each and every mile actually and necessarily traveled.'' (Id., sec. 4885.)

Thus, the sheriff is by general statute specifically authorized to be paid by the county ''ten cents per mile for each and every mile actually and necessarily traveled'' ''while in the discharge of his duties, both civil and criminal, *except as hereinbefore provided.''* The exception manifestly relates solely and entirely to the instances enumerated in this section of the statute whereby provision is made that he shall be paid only ''his actual expenses necessarily incurred in transportation.'' Such specific instances within the exception arise only in connection with the delivering of prisoners at the state's prison or state reform school, or insane persons to the insane asylum.

In our opinion, the phrase ''while in the discharge of his

duties, both civil and criminal," as employed in section 4885, does not mean that the sheriff shall receive ten cents per mile in the performance of every duty imposed upon him; but rather, that in the performance of duties for which by other provisions of the statute he is authorized to charge mileage, it is to be fixed at ten cents per mile. The clause in the section above mentioned does not authorize the sheriff to charge mileage for other traveling than that which is expressly mentioned in other statutes; it simply fixes the rate which may be charged when mileage is authorized to be paid. After having carefully and specifically provided that the sheriff shall receive mileage at a fixed rate in going and coming "for each mile actually traveled in serving every writ, order or other paper" (Sec. 4916, Rev. Codes 1921, as amended by Chapter 111 of the Laws of 1927), to allow mileage for travel in different directions in looking for one charged with crime who is not arrested, should be very clearly expressed in the statute in order to justify payment of such charges. (*Broughton* v. *County of Santa Barbara*, 65 Cal. 257, 3 Pac. 877; *Overall* v. *Tulare County*, 100 Cal. 65, 34 Pac. 519, 520.)

The authority of the sheriff of a county in executing a warrant of arrest is coextensive with the bounds of the state (secs. 11736, 11737, Rev. Codes 1921); but he is without power or authority as sheriff beyond the confines of the state. The ordinary discharge of his duties does not authorize him to leave the state save and except in instances where he is designated as the agent of the state in cases of extradition. (Sec. 12427, Rev. Codes 1921.) However, exceptional cases naturally arise in the administration of the business and affairs of the county and the several county offices, and the legislature, with this in mind, has made provision for such contingencies. By general statute it is provided that "contingent expenses necessarily incurred for the use and benefit of the county" are made proper county charges. (Subd. 8, sec. 4952, Rev. Codes 1921.) They are defined to mean "happening from unseen causes, or subject to unforeseen conditions." (Webster's New International Dictionary.)

"Such as are possible or liable, but not certain to occur." (*Mander* v. *Coleman*, 109 App. Div. 454, 95 N. Y. Supp. 696, 700.) And the board of county commissioners is especially vested with jurisdiction and power "to examine, settle, and allow all accounts legally chargeable against the county, except salaries of officers, and order warrants to be drawn on the county treasurer therefor, and provide for the issuing of the same." (Id., sec. 4465, subd. 11.) In the case of a sheriff let it be presumed that when in hot pursuit of a person guilty of a public offense committed in the presence of the sheriff, or where a felony has been committed and the sheriff has reason for belief that the person pursued is guilty, or in endeavor to serve a warrant on a person accused of crime, the reaching of the county boundary, or in fact the state line, by the fugitive should not necessitate the sheriff to abandon the chase, nor should he be on that account denied at least his actual expenses incurred in apprehending the fugitive. The reasonable amount so expended should properly be considered by the board of county commissioners as a contingent expense authorized by law and payment thereof is warranted. As a matter of effective law administration, in our opinion, the board of county commissioners is in such instances expressly warranted, upon proper showing, to allow and pay the sheriff's reasonable and actual expenses incurred as a proper contingent expense. To hold otherwise would defeat the law. The case before us arises on an entirely different state of facts. Here the sheriff simply went to Salt Lake City, Utah, to investigate a case at the direction of the county attorney. The statute does not expressly authorize such expenditures, and they are not properly included under "contingent expenses" in the absence of contract. Nothing herein contained is to be so construed as to authorize a Montana sheriff to arrest a . person in another state, even though he is in hot pursuit from Montana, or to return a prisoner to this state without extradition; for as before stated, the sheriff is without authority as such beyond the confines of the state. Extradition is the regular and only course provided for returning one arrested

for crime in a sister state, unless the prisoner voluntarily consents to return.

But it is argued that since the travel made by the sheriff ■ was by order and direction of the county attorney, the plaintiff's claim should be allowed under express authority of subdivision 2 of section 4952, Revised Codes 1921, whereby counties are made chargeable with "one-half of the salary of the county attorney, *and all expenses necessarily incurred by him in criminal cases arising within the county.*" However, it must be remembered that the demand of the sheriff is predicated entirely upon his legal rights incident to his position as sheriff, rather than upon contract as an employee of the county attorney. And were he to have entered into such contract with the county attorney as an individual rather than as sheriff, it would have been necessary for him to have first obtained the consent of the board of county commissioners to absent himself from the state. (Sec. 4739, Rev. Codes 1921.) It is neither alleged nor proved that the plaintiff acted as an employee of the county attorney, nor that he left the state with the approval of the board of county commissioners; consequently recovery may not be had on that theory.

Accordingly, the judgment must be, and is hereby, affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.